The question I pose to you is whether or not the decision of the Commission, as confirmed by the Circuit Court, is against the manifest way to the evidence. And there have been occasions when the thoughts are, in a workers' compensation case, that one side hires their guy and the other side hires their guy, and then the Commission picks which of the two they want to ensure. If, in fact, that were the issue before you this morning, I wouldn't be standing here. Dr. Orth, who is the doctor who examined my client after an aborted earlier appointment because of illness, posited the opinion. The Commission, the arbitrator, and the Circuit Court all embraced that opinion. And that opinion is that this man's episode of trauma on February 5th did not have anything to do with the ultimate need for surgery and the concomitant disability treatment and so forth that was presented at the time of the hearing. Counsel, just to clarify an issue, the claimant doesn't dispute that he suffered from a pre-existing injury? Not at all, Your Honor. Not at all. Eight years prior, he had had surgery. Eight years prior, he had the same physician perform an arthroscopic procedure. Eight years earlier, he had had a lateral meniscal tear, which was repaired. The knee was debrided. He was suggested that treatment be followed. He followed that treatment and was released at maximum medical improvement. We do not have the concluding medical records of Dr. Jimenez for that 1996 episode. However, since we're dealing with a pre-existing condition and since we do confess that he did not have a pristine need for a man in his 60s who does this kind of work, the question before the Court, and quite generally before the Commission is, could the event on February 5th, where he was standing ankle-deep, actually up to the middle of his bottom part of his legs, in cement, using a hook to pull the net of wire up to the middle of that four to six inch floor, which then broke, and he twisted and fell backwards, and of course you can assume something along the lines of an Alsted movie where his feet, his shoes were literally encased in concrete. He reported it. He followed up with the same doctor he saw in the 90s. That doctor performed an examination. The examination disclosed positive findings of clinical indication for the need for further investigation. He had an MRI, and lo and behold, the MRI disclosed that he had a new tear, a fresh tear, of the medial meniscus at the posterior horn. Posterior meaning rear part of the meniscus. You're saying the incident in question aggravated or accelerated the pre-existing condition. No, that's not what I'm saying. What I'm saying is that the MRI disclosed a fresh tear, because if we look at 1996 operative report, which Dr. Orth cites to, he does not include in his analysis of the 1996 report any mention, as Dr. Jimenez does, that the condyle, the medial condyle on the left knee, as well as the meniscus, was pristine. The doctor's words in 96, not Dr. Jimenez's records and commentary. Would your recovery be limited? I beg your pardon, your honor? Would your recovery be limited to a fresh tear? No, it would not. But again, that's why this case is here. That's why this case cannot stand as it is. Because if it was a degenerative tear, if it was a macerated meniscus, then perhaps Dr. Orth's comment about this being related to arthritis might have some weight to it. However, the doctor admits, he admits that he has no x-rays. At the present time, the condition of Mr. Reed's left knee is that he has degenerative arthritis of his left knee. I do not, however, have any x-rays of his knee to review. So I cannot state the degree of severity. That's an oxymoron. How can the doctor state with clarity and with a reasonable degree of medical certainty that the arthritic condition is the sum total of this guy's problem when he doesn't have any validating diagnostic study? Your Honor, let me ask you this. Let's take this one step at a time. The claimant has the burden of proving by preponderance of the evidence the injury. No question about it. All right. So you have a situation, you're saying you're obviously undercutting or you're arguing against the foundation of Orth's opinion. However, the arbitrator noted the opinions of Jimenez did not adequately address the issue of causal connection. Well, Your Honor, in reviewing the records of Dr. Jimenez, and I'm at a total loss to comprehend how the arbitrator could have said that when on February 10th of 2005, the initial visit with this man, he had a recent work-related injury on February 7th when he injured his knee while working again on the job. February 15th note of Dr. Jimenez. He had a work-related injury regarding the injury on February 7th. This patient has a left knee cartilage damage status post-knee arthroscopy as a result of a work-related injury. October 13th. And I can go on and on and on. No less than five places does Jimenez. And let's remember something. They paid him compensation. They paid all the medical. This was not a disputed case. This went off the rails when this man had the flu and failed to recover. And so Jimenez says, refers to the issues as work-related injury or work-related issue. Is that simply relating whether an outline of the information relayed to him by the claimant or does it really reflect Jimenez's own opinions regarding the cause of the knee problem? Your Honor. Is the record clear on that? Yes. Why? Because the MRI demonstrates very close in time. And there are thousands of cases, pardon me, where the court has held insufficient evidence of events to establish a nexus between the pathology and the event. This isn't in a vacuum. This is a simple and summary proceeding. You have a treating doctor who sees the man shortly afterwards. The commission found he had an accident. The MRI, the most next to late arthroscopic inspection itself says he has a tear of the medial meniscus, which was pristine eight years ago when he had his other injury. How do you ignore that? How do you turn your back on the fact that Dr. Orth never comments in his report about the findings in 1996 that the medial condyle of the left knee and the meniscus, the cartilage in this case, is pristine? You would have to avoid, it's like trying to call balls and strikes with a blindfold on. These guys are judging a beauty contest blindfolded. They're not even using tactile sensation to determine the efficacy of the beauty. They're simply saying, Dr. Orth says arthritis. Therefore, it's not related. I cannot find a case in Illinois, and I submit to this court, if you affirm this decision, I beg you to please point me to some citation that says that even when there is fresh pathology demonstrated by an objective test, when the treating physician in his operative report reports precisely what he finds when he goes in there, that there's no relationship to a affirmed accident and the consequences of that pathology. There are no magic words in Dr. Orth's to say Orth's opinion is unrebutted. Unfortunately, it is not true for the respondent. Orth's opinion is unsupported by the facts. This case has to be reversed and remanded. Otherwise, throw out the rules of evidence, throw out corroboration, throw out objective testing, and simply let it be serendipitous as to whatever the ilk or the inclination of the fact finder is down below, and let's move forward. Are there any questions? Thank you, counsel. Thank you. Counsel, please. Thank you. Please, the court. Mr. Lexie, my name is Paul Coghlan, and I represent Martin Cement. The decision that is before your honors this morning from strongly and competently supported by this record. It is certainly not contrary to the manifest weight of the record, and let me touch on a few reasons. Can I ask you a question? Sure. What did this commission find? Did they find any sustained, any injury arising out of him in scopeless employment? Sure, yeah. What was that injury? He had apparently some type of a temporary aggravation of the knee. Of course, that's not what Orth did. That's not what Orth said at all. But as of the date of Dr. Orth's examination. Orth said specifically that he opined that the petitioner's complaints on January the 3rd, 2006, were related to degenerative arthritis of the left knee and not related to an incident on February the 7th, 2005. Right. So, I mean, the arbitrator found that he sustained an injury arising out of him in scopeless employment. Orth opined that nothing happened to him that day, that it was all degenerative in nature. They said that they relied on Orth's opinion, and then they said he did sustain injury and awarded him 40 weeks of TTA, and then remanded it back under Thomas. What are they supposed to do under Thomas on the remand if there's nothing wrong with him? Whether or not there's any lingering permanency is a good question, which is not before the Court right now. I tend to agree with you. There might not be anything there. Who drafted this? There might not be anything. Who drafted this? I'm sorry? Did the arbitrator draft this himself, or did one of the parties draft these findings? The arbitrator wrote this decision himself, primarily. It's a real beauty. And I think in answer to your question, Justice Hoffman, I think the arbitrator and the commission is free to give him the benefit of the doubt as to accident and is free to give him some temporary total disability. That's not the issue. The issue at the 19B was whether or not the gentleman needed surgery, and if so, was that surgery related to an accident that occurred on February 07 or whatever the date was. And they relied upon Dr. Orth to answer that question in the negative. They don't have to embrace or adopt every single one of Dr. Orth's opinions. That one was sufficient. He's saying that Orth's opinion, he gave a very impassioned plea, as you observed, that Orth's opinion is not supported by any medical evidence. That basically, he's ignoring an MRI that showed a fresh tear unrelated to what would make this their normal degenerative process. So how do you respond to his impassioned argument about the fresh tear? Well, if that's the case, why did he put in any evidence to rebut it? What do we have? And what we have here is a gentleman with a longstanding, ongoing history of similar problems. In addition to the medical records and the opinions of Dr. Orth, the commission was free to reject Petitioner's testimony and find him not credible as to that aspect of his testimony. If you'll recall, this gentleman settled his previous case with the same knee for $125,000 against a different employer. I knew when I started out my cross-examination that he had received $125,000 for the same knee. And when I was done, despite my skillful efforts with my cross-examination, that's still pretty much all I knew. He couldn't remember if Dr. Jimenez released him to go back to work. He couldn't remember if he went back to work. He didn't know what the year was. His brain collapsed, and we have a vacuum of information. Excuse me. The 1996 operative report from the Osteoscopy says that the medial meniscus appears normal. That's what the report says. We've got an MRI conducted on February the 11th, 2005, which is, what, three weeks after the accident, four weeks after the accident, that shows a tear posterior horn medial meniscus. Where'd it come from? Where'd that tear come from? Well, if somebody has a – I'm not a doctor, okay? It may – you can get a tear just from normal aging process. I don't know. I'm not a doctor. That's why we have doctors. We don't have lawyers reviewing MRI. We don't have the appellate court's function as not to review an MRI and go back and try and assist a petitioner and say, gee, maybe we should have had a doctor review this MRI and offer some evidence as to that issue. That was not done in this case. Counsel's arguments that – you know, he's arguing cis pro. He's arguing aggravation of a preexisting condition, a chain of events. That's like arguing if the Bears are losing by one point in the fourth quarter with a minute left, kicking a field goal can win the game just as much. It's not required that you score a touchdown. You can kick a field goal. The problem is he missed the field goal. So the commission didn't find an aggravation of a preexisting condition. They didn't find a chain of events sufficient to sustain a finding of causation. They ruled it wasn't related. So the question becomes is there evidence? So the municipal terror wasn't related to the injury, to the accident? That's what we have here. That's what we have here. That municipal terror was not related to the accident. Based on what? Based upon the expert opinion of Dr. Orth, based upon a review of the medical records which revealed a same or similar condition which could have been ongoing or preexisting, based upon a rejection of this gentleman's testimony as to that issue, and if you look at pages 31 through 38 of the commission transcript, when I attempted to elicit some type of information about the extent of this previous problem, I don't remember. I don't know. I don't know what year you're talking about. So there was plenty, and in addition, the failure, although it's not required, the failure of Petitioner to offer some testimony to answer these questions that Justice Hoffman is asking me right now. But we do have Dr. Orth, if I understand the records correctly. He said, I can't go any further. I do an examination. I can't go much further beyond that. This is my opinion. Medical records show degeneration. But x-rays would be helpful to go further with my opinion. Okay. Is that a fair summary? Pretty much. I mean, he wasn't the first. Okay. So if that's a fair summary, then the issue then becomes, there does exist an MRI prior to that examination by Dr. Orth, doesn't it? There was an MRI done. And so the commission has an MRI, an x-ray technique, if you will, that shows a tear. Okay. What you're saying is this case would be a different case if the claimant had medical opinion to connect that tear to the ‑‑ It would be a completely different case if he had some opinion on that. Because the simple fact you have a tear doesn't mean there's any trauma. You can have a tear just by the normal aging process. That needs to be ‑‑ Well, I don't know that, and I don't know if you know that, because you said earlier that it requires some type of medical expertise that neither attorneys or this Court has. Wouldn't it have been helpful if he would have offered that opinion to Your Honors so you would have that in front of you? Wouldn't it have been helpful to the arbitrator? Wouldn't it have been helpful to the commission? But instead, he's asking the Illinois Appellate Court to review an MRI. I don't think that's the function of the Illinois Appellate Court. The testimony, such as it is ‑‑ Let us figure out what our function is. I'm sorry? Can we figure out what our function is? I'm sorry? Would you let us figure out what our function is? I'm simply saying the commission ruled against the petitioner in reliance upon Dr. Orth. It isn't limited to Dr. Orth's opinions into making that denial. There are other things in this record, including a lack of credibility, at least as to that issue, that they could have relied upon. Which issue is it that we're saying is a lack of credibility? The issue of causal connection. Because of the evasive and vague answers by the petitioner when inquiries were made as to whether or not he was having any problems with that knee prior to this event. Inquiries made as to whether or not Dr. Jimenez ever released him to go back to that type of work. Inquiries that were made as to whether or not Dr. Jimenez ever gave him a full duty release. All of those questions, there is an inference that could be drawn from this record that they did not find this gentleman credible. That in and of itself is sufficient to sustain the commission's decision in this case. And then when you factor in that we don't have an adverse medical opinion, that we do have evidence of a similar ongoing problem to the same knee in this case, it's hard for anybody, any reasonable person, I would think, to say that the commission was not within their discretion in ruling against the petitioner as to the issue of causation. Even if there's one or more members of this panel, had they been the trier of fact, would have ruled in his favor. Unless your honors have any questions, that's all I have. Thank you.  Rebuttal, please. Counsel, can I address one issue that is critical here? Yes, your honor. Your opponent seems to be saying, all right, we'll concede the MRI shows a terror. He seems to be saying, so what? There's nothing, there's no opinions in the record that establish a causal connection between the accident and the terror. Do you see an example? Maybe he's saying your client jumped up when the bearer scored a touchdown and hurt his meniscus at home. He's saying it could come from any source. There's nothing that connects it to the accident. So how do you answer that? Well, two ways, your honor. First of all, there's been discussion this morning of ongoing problems with the left knee. There wasn't an ongoing problem. There was a 96-month hiatus between the discharge from Dr. Jimenez for the lateral meniscal tear and repair and this event. This happens on February 7th. On the 11th, four days later, he has an MRI. The syllogism that we present is very straightforward, and you've seen it many, many times. An event happens. The commission found that the event happened. The commission found that an injury occurred. So then what we look for, unlike respondent's attorneys who want the magic words where the doctor says, within a reasonable degree of medical and surgical certainty, I have reviewed the MRI, and I have concluded that this fresh tear in the medial meniscus, which was in 1996, found to be normal, could or might be causally related to the event. That's what they want. That's not what we get. This is a treating doctor. And this notion. My problem is more systemic with this. This arbitrator, which the commission affirmed, found that the occurrence, the February 7th occurrence, was inconsequential to his present condition of ill-being as per the opinions of Dr. Orth, said condition is not causally connected to this incident. Now, that's what he found. Right. And then gave him 40 weeks of TT. Right. What did he give him 40 weeks for? Exactly. And if it was inconsequential, how does he then ignore or deal with the clinical findings in the MRI four days after the event? So if we're dealing with an inconsequential activity of this guy pulling that mesh in that concrete, and then it breaks and he twists and falls backwards, then why would there be swelling effusion when he sees a doctor on a clinical examination on the 10th, and then that's confirmed the next day on the MRI? The arbitrator, here's what I think happened. Speculation. The arbitrator heard counsel ask, and my client respond, I settled my former case for $125,000. Why is that even included in the decision of the arbitrator? What barrier? It wasn't an 8E finding. It was something different. I suppose this case would be a lot easier for me if the arbitrator gave him nothing. Yes. It would be a real easy case. I wouldn't be here. Orth says no causal connection to your condition. No accident. Not even 40 weeks. Yeah. And then the commission remanded it back under Thomas. I can't figure out what they're supposed to do on the remand if his injury was inconsequential. I mean, I don't know. I mean, I think it's just a terrible decision. Unfortunately, it's all we have to work with. If Dr. Orth had taken those x-rays, and Dr. Orth had said in his report, I reviewed the MRI, I have taken x-rays, it is my conclusion that the arthritis was so advanced that anything, anything mere standing up and saluting the flag would have caused this meniscal tear, and the commission bought that, well, they get to pick, don't they? I'm curious what this comes down to, though. My question is, who has the burden of proving a causal connection between the incident and the injury? Your Honor. I'm struggling with that. Well, with all due respect, and I mean that sincerely. That's a preamble that I really don't like, but with all due respect, this boils down to a very simple syllogism. The man goes to work. He has an event. He described it in his testimony. He reported it according to all of the unknown rules of working people. Counsel, thank you. Court will take the matter under driver's disposition.